IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPHINE M. SMIECINSKI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 07 C 3971 |
| | ) | |
| NEW AGE TRANSPORTATION, | ) | Chief Judge James F. Holderman |
| DISTRIBUTION AND WAREHOUSING, | ) | |
| INC., | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Josephine M. Smiecinski filed this lawsuit under Title VII of the Civil Rights Act of 1964 against her former employer, New Age Transportation, Distribution and Warehousing, Inc. ("New Age"), alleging that she had been sexually harassed while working at New Age and that New Age fired her because she complained about the harassment. Smiecinski subsequently dismissed her sexual harassment claim. Before the court now is New Age's motion for summary judgment on Smiecinski's retaliation claim [53]. For the reasons stated herein, that motion is granted.

Background

In ruling on a motion for summary judgment, this court must consider the facts before it in a light most favorable to the non-moving party, drawing all reasonable inferences and resolving all doubts in the non-moving party's favor. *Keri v. Bd. of Trustees of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006). Therefore, in considering New Age's motion the court will review the facts properly before it and draw all reasonable inferences in Smiecinski's favor.

Smiecinski was employed by New Age as a call center representative from September 13, 2004, to September 29, 2004. (Pl.'s Resp. to Def.'s L.R. 56.1 Stmt. ¶¶ 4, 7.) As a new employee, Smiecinski received and read a copy of New Age's Employee Handbook. (*Id.* ¶ 9.) Smiecinski also received and signed a copy of New Age's Telecommunications Policy, which instructed employees that the company's "voicemail, computer equipment, computer software, fax machines and peripherals are to be used for business purposes only . . . ." (*Id.* ¶ 10.) Smiecinski received training on how to perform her job as a call center representative from Shannon Thornton and Matt Conrad. (*Id.* ¶¶ 15, 16.)

On September 27, 2004, Smiecinski received access to New Age's e-mail system. (*Id.* ¶ 17.) Smiecinski immediately began sending and receiving e-mails, which by her own admission, did not concern New Age business. (*Id.* ¶ 18.) Smiecinski sent no fewer than eighty personal e-mails from the time she received e-mail access on September 27, 2004, to the end of her shift on September 28, 2004. (*Id.*, Ex. A.)

On September 28, 2004, Smiecinski received her 14-day evaluation from Diane Canoy, Smiecinski's manager, and Anita Kennedy, New Age's human resources manager. (*Id.* ¶¶ 11, 20; Pl.'s L.R. 56.1 Stmt. ¶ 21.) Canoy and Kennedy's evaluation of Smiecinski was generally positive, but Canoy and Kennedy did not know of Smiecinski's misuse of New Age's e-mail system at that time. (Pl.'s Resp. to Def.'s L.R. 56.1 Stmt. ¶¶ 20, 22.) During the evaluation, Canoy and Kennedy asked Smiecinski whether she felt comfortable working at New Age. (*Id.* ¶ 23.) Smiecinski responded that, "Matt [Conrad] creeps me out. He makes me feel uncomfortable in general. I'm always rushing, because I feel like he's always looking over my shoulder. Shannon has also noticed that he's been looking at me." (*Id.* ¶ 25.) Smiecinski also

2

told Canoy and Kennedy that Conrad had been staring at her, looked down her shirt, and "pressed down on her thigh as he was training her." (Pl.'s L.R. 56.1 Stmt. ¶ 30.) After discussing Smiecinski's evaluation and her complaints about Conrad, Canoy and Kennedy asked Smiecinski if there was anything they could do to make her feel more comfortable. (Pl.'s Resp. to Def.'s L.R. 56.1 Stmt. ¶ 30.) Canoy and Kennedy also instructed Smiecinski "not to discuss these issues with anyone." (*Id.* ¶¶ 41, 43.)

Upon returning to her station, Smiecinski immediately sent an e-mail to Thornton, stating:

> You must delete this once read. . . . I talked to Diane and Anita about the issue w/ him but I'm no longer to discuss it with you because I told them that I've been talking to you about it too and that you noticed things as well staring at me. . . .

(*Id.* ¶ 42; Smiecinski Dep. Ex. 13.) Smiecinski followed up in a second e-mail:

> I have to trust them that they'll take care of it so I don't know what they are going to do?????

(Pl.'s L.R. 56.1 Stmt. ¶ 31; Smiecinski Dep. Ex. 13.) Smiecinski admitted that the e-mails referred to what she had discussed with Canoy and Kennedy and that she had, indeed, conveyed to Thornton some of the information discussed during the meeting. (Pl.'s Resp. to Def.'s L.R. 56.1 Stmt. ¶ 44.) Smiecinski also admitted that she included the words, "You must delete this once read," because she did not want New Age to see the e-mail. (*Id.* ¶ 46.)

On the evening of September 28, 2004, Canoy checked the e-mails of New Age's two most recent hires, one of which was Smiecinski. (*Id.* ¶¶ 48, 50.) Canoy explained at her deposition that it is New Age's practice to randomly check the e-mails of new employees during their first 30 days of employment to ensure compliance with New Age's telecommunications policy. (*Id.* ¶ 47.) Canoy also explained that she had received information that one of New

3

Age's customers had received personal e-mails from unknown employees of New Age, and so she felt obligated to investigate the source of the e-mails. (*Id.* ¶ 49.) When Canoy pulled Smiecinski's e-mails, Canoy found "a multitude of personal e-mails sent to and from [Smiecinski] in just the two days [Smiecinski] had e-mail access." (*Id.* ¶ 52.) Smiecinski's e-mails included many personal e-mails, including the "delete this once read" e-mail described above. (*Id.* ¶ 53.) That e-mail caused Canoy concern because it showed that Smiecinski had violated Canoy and Kennedy's instruction that Smiecinski not discuss with anyone the subject of their meeting. (*Id.* ¶ 54.) Canoy showed the e-mails to Kennedy. (*Id.* ¶ 55.)

After reviewing Smiecinski's e-mails, Kennedy concluded that Smiecinski had not only been insubordinate but that she had violated New Age's telecommunications policy. (*Id.* ¶ 56.) Kennedy then presented the e-mails to New Age's Vice President, Jennifer Talley, and President, Carolyn Gable. (*Id.* ¶¶ 6, 57, 58; Pl.'s L.R. 56.1 Stmt. ¶ 15.) Kennedy explained to Talley and Gable that Smiecinski specifically had been instructed not to discuss with anyone the issues discussed during her 14-day evaluation and that Smiecinski's e-mails revealed that she immediately violated the instruction. (Pl.'s Resp. to Def.'s L.R. 56.1 Stmt. ¶ 62.) Gable first inquired about whether the issue with Conrad had been resolved, and Kennedy assured Gable that it had. (*Id.* ¶¶ 59, 60.) Gable next noted that New Age needed employees it could trust, Smiecinski had been employed by New Age for only thirteen days, Smiecinski had shown herself to be untrustworthy by disregarding Canoy and Kennedy's instruction, and Smiecinski had violated New Age's policy on e-mails. (*Id.* ¶ 63.) Gable then decided that Smiecinski's employment with New Age "wasn't working out" and that it was appropriate to terminate Smiecinski based on her insubordination and violation of company policy. (*Id.* ¶¶ 64, 66.)

4

Smiecinski's employment with New Age was terminated on September 29, 2004. (*Id.* ¶ 66.) Smiecinski's termination notice stated that Smiecinski was terminated because of a "disregard for policy and direction from supervisor." (*Id.*, Ex. B.) New Age's attorney in a subsequent, related proceeding before the Illinois Department of Human Rights also noted that:

> New Age wants to emphasize that the Complainant was not discharged for her abuse of email . . . . Her discharge was for her specific disregard for the directions given to her by her supervisor during her employee review on September 28, 2004, as well as her disregard for company policy. She would not have been terminated solely for the email usage. Rather she was terminated because she was told not to discuss her fourteen (14) day evaluation review and immediately went out and discussed it with other employees.

(*Id.*, Ex. C.)

Smiecinski subsequently filed this lawsuit against New Age, alleging that she had been sexually harassed while working at New Age and that New Age fired her because she complained about the harassment. After pretrial discovery proceeded in the case, Smiecinski moved to dismiss her sexual harassment claim with prejudice [30], which the court granted [40]. Smiecinski then filed a First Amended Complaint alleging only unlawful retaliation [41]. New Age now requests that this court grant summary judgment in its favor on Smiecinski's retaliation claim.

Analysis

In its motion New Age asserts that summary judgment in its favor is appropriate because Smiecinski cannot establish a prima facie case of retaliation. Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A

5

party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying the evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986); *Keri v. Bd. of Trustees of Purdue Univ.*, 458 F.3d 620, 627-28 (7th Cir. 2006). Once a properly supported motion for summary judgment is made, the non-moving party cannot rest on its pleadings but must affirmatively demonstrate, by specific factual evidence, that there is a genuine issue of material fact requiring trial. *Celotex Corp.*, 477 U.S. at 324; *Keri*, 458 F.3d at 628. Conclusory allegations, "if not supported by the record, will not preclude summary judgment." *Keri*, 458 F.3d at 628 (citing *Haywood v. N. Am. Van Lines, Inc.*, 121 F.3d 1066, 1071 (7th Cir. 1997)).

Smiecinski has chosen to prove her retaliation claim using the direct method set forth in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). Under Title VII it is unlawful for an employer to retaliate against its employee because the employee "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this subchapter." 42 U.S.C. § 2000e-3(a); *see Argyropoulos v. City of Alton*, 539 F.3d 724, 732-33 (7th Cir. 2008). To prevail on a retaliation claim under Title VII, the plaintiff must first establish a prima facie case of retaliation. *Argyropoulos*, 539 F.3d at 733. To establish a prima facie case using the direct method, the plaintiff must show that: (1) she engaged in a statutorily protected activity, (2) she suffered an adverse employment action, and (3) a causal connection exists between the protected activity and the adverse employment action. *Id.*

New Age first argues that it is entitled to summary judgment because Smiecinski cannot establish that she engaged in a statutorily protected activity. Specifically, New Age asserts that

Smiecinski did not report Conrad's allegedly offensive conduct through New Age's formal complaint process and, even when she informally reported Conrad's conduct to Canoy and Kennedy, Smiecinski told Canoy and Kennedy only that Conrad's conduct "creep[ed] her out" and made her feel uncomfortable. (Def.'s Mem. Supp. Summ. J. 12.) Thus, New Age reasons, Smiecinski's complaints did not rise to the level of a protected activity. (*Id.*)

A plaintiff employee must engage in statutorily protected activity before the defendant employer can be held liable for retaliating against her. *Durkin v. City of Chi.*, 341 F.3d 606, 614-15 (7th Cir. 2003). Vague, informal complaints of harassment do not generally constitute a protected activity, *id.* at 615, and employees victimized by sexual harassment are strongly encouraged to proceed through their employer's formal complaint process, *see Cerros v. Steel Tech., Inc.*, 398 F.3d 944, 952 (7th Cir. 2005). An employee's failure to use the employer's formal complaint process, however, is not necessarily fatal to her Title VII claim. *Id.* The critical inquiry is "whether the employee adequately alerted her employer to the harassment." *Id.*; *see Dey v. Colt Const. & Dev. Co.*, 28 F.3d 1446, 1458 (7th Cir. 1994). Moreover, an employee may engage in protected activity even if the complained of conduct does not violate Title VII so long as the employee "reasonably believed in good faith the practice [she] opposed" was unlawful. *Tate v. Executive Mgmt. Serv., Inc.*, ___ F.3d ___, 2008 WL 4527707, *3 (7th Cir. Oct. 10, 2008) (internal quotation marks and citation omitted).

In this case, even though Smiecinski did not use New Age's formal complaint process to air her concerns about Conrad's conduct and brought her concerns to Canoy and Kennedy only after being prompted, the manner in which Smiecinski brought her concerns to New Age's management was sufficient to alert New Age to potential harassment. *See Dey*, 28 F.3d at 1458

7

(concluding that employee's complaints to supervisor concerning hostile work environment sufficient to alert employer to potential harassment). Moreover, construing the facts in a light most favorable to Smiecinski, this court is satisfied that Smiecinski's allegations that Conrad looked down her shirt, touched her thigh, and made her feel uncomfortable, although not necessarily rising to the level of sexual harassment, were reasonable and made because Smiecinski genuinely believed Conrad's conduct to be harassing. Accordingly, Smiecinski's complaints rose to the level of a protected activity under Title VII.

New Age next argues that it is entitled to summary judgment because Smiecinski cannot establish a casual connection between her complaint of harassment and her termination. (Def.'s Mem. Supp. Summ. J. 13-14.) To establish a causal link between a plaintiff's exercise of a protected activity and her termination, the plaintiff must present evidence of a retaliatory motive other than the timing of her termination. *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 758-59 (7th Cir. 2006). Suspicious timing alone will not support an inference of retaliation. *Id.* That is, "the mere fact that one event preceded another does nothing to prove that the first event caused the second." *Id.* (internal quotation marks omitted).

Smiecinski concedes that to survive summary judgment she was required to come forward with evidence of a causal connection between her complaint of harassment and her termination, other than the proximity of her complaint to her termination. (Pl.'s Mem. Opp. Summ. J. 9.) Smiecinski then attempts to manufacture evidence from discrepancies between her witnesses' deposition testimony and New Age's witnesses' deposition testimony that, she contends, establishes "[d]efendant's lack of truthfulness regarding [] material facts" and thus constitutes "evidence of a causal connection" between her complaint and her termination. (*Id.* at

8

10.) The discrepancies identified by Smiecinski, however, establish neither that New Age's witnesses were untruthful nor a material dispute concerning whether New Age had an improper motive for terminating Smiecinski.

Smiecinski identifies four categories of allegedly untruthful statements from which, she asserts, a reasonable fact finder could infer that New Age harbored a retaliatory motive for her termination. The first category involves differences between Canoy and Kennedy's recollection of what Smiecinski reported at the September 28, 2004 meeting and Smiecinski's recollection. (*Id.* at 9-10.) Specifically, Smiecinski said that she reported to Canoy and Kennedy that Conrad stared at her, Conrad looked down her shirt, Conrad touched her thigh, and another co-worker noticed Conrad's inappropriate behavior. Canoy and Kennedy recalled only that Smiecinski reported that Conrad's conduct made her uncomfortable. These differences in recollection, however, are neither evidence of untruthfulness on Canoy and Kennedy's behalf nor are the differences material to whether Smiecinski's complaint of harassment was related to New Age's decision to terminate Smiecinski.

The second category of allegedly untruthful statements involves discrepancies in deposition testimony given by Smiecinski's witnesses and New Age's witnesses concerning what one of Smiecinski's co-workers reported to New Age's management about Conrad's conduct. (*Id.* at 11-13.) The court has not set out the substance of the testimony here because, like the differences between Canoy and Kennedy's recollection of events and Smiecinski's recollection, the discrepancies between the testimony of Smiecinski's witnesses and New Age's witnesses does not establish that New Age's witnesses were untruthful nor is the testimony material to New Age's motive for terminating Smiecinski.

9

The third category of allegedly untruthful statements concerns representations made by New Age regarding the timing of Canoy's retrieval of Smiecinski's e-mails. (*Id.* at 13-14.) Specifically, Canoy recalled at her deposition that she retrieved Smiecinski's e-mails on the evening of September 28, 2004, and presented the e-mails to Kennedy. Kennedy then presented the e-mails to Tally and Gable. At Tally's deposition, Tally was shown a stack of e-mails and identified the stack as the e-mails shown to her by Kennedy. The stack of e-mails contained e-mails that were sent and received by Smiecinski on September 29, 2004. From the fact that the stack of e-mails identified by New Age's management as having been retrieved and reviewed on September 28 contained e-mails dated September 29, Smiecinski insists that a finder of fact could reasonably infer that a causal connection exists between Smiecinski's protected activity and her termination. But the fact that the stack of e-mails identified by Talley contained e-mails from September 29 proves only that New Age's management retrieved and reviewed Smiecinski's emails up to the time of Smiecinski's termination.

The fourth category of allegedly untruthful statements concerns New Age's allegedly shifting reasons for terminating Smiecinski (*id.* at 13) and is best addressed in the context of whether New Age's proffered reasons for terminating Smiecinski were pretextual.

Even if Smiecinski could establish a causal link between her complaint of harassment and her termination, and this court concludes that she cannot, Smiecinski's claim nevertheless would fail because she cannot show that New Age's proffered reason for her termination was a pretext for retaliation. If the plaintiff establishes a prima facie claim of retaliation, the burden shifts to the defendant to come forward with a legitimate, nondiscriminatory reason for taking adverse action against the plaintiff. *Worth v. Tyer*, 276 F.3d 249, 265 (7th Cir. 2001). If the defendant

satisfies its burden, the burden then shifts back to the plaintiff to prove that the reason offered by the defendant was a mere pretext for retaliation. *Id.* Pretext means "more than just faulty reasoning or mistaken judgment on the part of the employer; it is a lie, specifically a phony reason for some action." *Argyropoulos*, 539 F.3d at 736 (internal quotation marks and citation omitted). A plaintiff may establish pretext with evidence that the defendant was "more likely than not motivated by a discriminatory reason or that [its] explanations are not worthy of credence." *O'Neal v. City of New Albany*, 293 F.3d 998, 1005 (7th Cir. 2002). For example, when an employer gives one reason at the time of the termination but later gives another reason, which is unsupported by the evidence, a fact finder could reasonably conclude that the new reason was pretextual. *Id.* at 1005-06.

New Age explained that it terminated Smiecinski because she violated Canoy and Kennedy's directive that she not discuss with anyone the subject of their September 28, 2004 meeting and because Smiecinski violated the company's telecommunications policy. Smiecinski contends, however, that New Age has given inconsistent reasons for the termination such that a jury could reasonably conclude that New Age's non-discriminatory reasons were pretextual. In particular, Smiecinski points to one sentence from a letter written by New Age's then-attorney to the Illinois Department of Human Rights stating, "New Age want to emphasize that [Smiecinski] was not discharged because of her abuse of email." Smiecinski then argues that the attorney's statement is inconsistent with the explanations New Age now gives for terminating Smiecinski. But Smiecinski took the sentence out of context. The paragraph continued: "[Smiecinski's] discharge was for her specific disregard for the directions given to her by her supervisor during her employee review on September 28, 2004, as well as her disregard for company policy."

11

Thus, the reasons New Age gave to the Department of Human Rights to justify Smiecinski's termination are entirely consistent with the reasons New Age gave to Smiecinski at the time of her termination as well as the reasons New Age has asserted throughout this litigation. Consequently, Smiecinski has failed to establish a disputed issue of fact, on this basis alone or in combination with the timing of Smiecinski's termination, as to whether New Age's explanation for Smiecinski's termination was a pretext for an unlawful termination.

## Conclusion

For the foregoing reasons, the court grants summary judgment in favor of defendant New Age Transportation, Distribution and Warehousing, Inc. Judgment is ordered entered. The case is terminated in its entirety.

ENTERED:

_____
James F. Holderman
Chief Judge

Dated: October 15, 2008